May it please the court. I'm David Vanoss of the law firm of David Vanoss and Associates from Austin, Texas. I represent the appellants in this case who are Johnny Lee, an individual who is a retiree from a telephone company. He retired from a company known as Valor Telecommunications, which was later merged and became Windstream Telecommunications, that merger and change of name occurring in 2006. I also represent the communications workers of America, which is Mr. Lee's union, Mr. Lee's union bargaining agent. The litigation commenced when Valor Windstream sued a putative class of defendants who were retirees seeking a declaratory judgment that the company had the right. It's the Maytag scenario. Yes, yes. And then the way the communications workers came into the case was that CWA filed a motion to intervene to enforce its contract because we view both on behalf of Mr. Lee and on behalf of the CWA. Let's get to the vesting. Do you agree that this appeal is governed by the Eighth Circuit ERISA vesting precedent? To a large part. To a large degree, it is. Tell me to what extent not. It is governed by the Dubuque-Packing case. That's too old. That's not the ones that you have to worry about. Your Honor, this court, the reason we're here and really essential to our argument is that this court has held that when a collective bargaining agreement is part of the picture, that it is unwise for the court to make a decision without reviewing the collective bargaining negotiating history and the custom and practice of the parties. The court below granted summary judgment to Windstream Valor against Mr. Lee and dismissed CWA's cross-complaint on the grounds, as held by the court below, that the documents were unambiguous as to Windstream Valor's right to make this change. We did not move for summary judgment. We are seeking here a trial to probe this evidence because ... Where, if you agree that the Eighth Circuit's ERISA vesting precedents are controlled, then tell me where in the documents we find the explicit vesting. What agreement for what period of time and what employees? And please, with a sight to the record, because I don't ... My limited understanding of the record is you can't ... You don't have ... We are not claiming that everything about the plan is vested for all time, for all returns. Just tell me the specific vesting, conferring language that you rely on. The right of the retirees to the company contribution schedule to their premium costs is very specifically and expressly identified and established in the collective bargaining agreement ... But not for all times. I mean, that's the whole point about ... CBAs are always for a term, and that's because the unions as well as the employers acknowledge that times change. What this case is about, Your Honor, is the company's unilateral drastic change in a term of the collective bargaining agreement during the term of the collective bargaining agreement. I understand. That's why I asked you if you agree that our ERISA precedents control, or are you arguing that this is somehow an LMRA 301 case not governed by ERISA? CWA's claim is a Section 301 case. It is a Section 301 case because ... Why isn't it? What precedents, what case do you rely on that our ERISA precedents don't control? The United States Supreme Court decision in the Pittsburgh Plate Glass Company decision. That's the decision that held that ... That recognized retirees' interests. I just dealt with it. And it held that when a collective bargaining agreement does cover the rights of retirees or the conditions of retirement, that that agreement is entitled to enforcement under Section 301. Okay, but in accordance with its terms, which means that that promise expires with the CBA and is therefore not vested. Your Honor, in this case, we are not addressing what may have occurred or what might occur after the expiration of this contract. The problem is that they changed the terms of the contract ... Let me try it a different way. When did Mr. Lee's write best? I'm back to now Maytag because I dealt with this in Maytag. Somewhat to my surprise, the plaintiffs were not arguing that their rights vested when they retired. All of them had rights vested in the last contract. So what's your position here? When Mr. Lee required under the ... Mr. Lee didn't retire before the current contract, right? He did retire before the current contract. He retired during the term of the 2005 ... Or he was somehow pulled along by what the union negotiated in the post-retirement contract. Even though the 2005 to 2008 contract said that this applies to persons who retire during the term of this contract, after that contract was replaced by the 2008 to 2011 contract, the company continued to honor his retirement conditions and continued to provide the medical retiree benefits. Well, that's been the case in all of these cases. I don't think, Your Honor ... Going back to the Meatpacker cases when I was still a rookie. Perhaps I ... They all involved decades of, well, just the retirement ... Of course, we'll continue ... Perhaps I misunderstood your initial question, Your Honor. Our case relies on the Section 301 right of CWA to enforce the contract. We argue and we claim that when ... What contract as to Mr. Lee? Two contracts. First, the contract that was entered into in 2005 that lasted until 2008. And then the contract that was entered into in 2008 and lasted until 2011. The company ... So we have a one-way street here. In other words, if the union got increased retirement benefits in 2008, Mr. Lee gets the benefit of those even though he's retired. But if the benefits were somehow terminated unilaterally or otherwise, he gets to keep what he had. That's your position, right? That's what I'm hearing. Our position is narrower than that and specific to the facts of this case and to the contract in this case. The contract in this case says that in order to receive retiree medical benefits, the retiree must pay a percentage amount of the retiree medical premium set forth below. And the contract says in Section 2 of the Memorandum of Agreement on Retiree Medical Benefits, the company and retiree contribution percentage of this amount will be based on the following contribution schedule. Will be based. And under that contribution schedule set forth in Section 2 ... But in other provisions it said it can be changed or eliminated or ... At will, to use that word. We contend, Your Honor, and what we are here about, Your Honor, is that the discrepancies between these different provisions create ambiguities which entitle us to a trial to probe the evidence. To introduce extraneous evidence ... Yes, Your Honor. Extraneous to the contract terms. Yes, Your Honor. Because of the ... It's not a jury trial because interpreting a contract is a question of law. I don't believe that either party requested a jury ... Okay. So it's not even ... Did you submit to the district court the extrinsic evidence that required a trial? We did, Your Honor. Why do we need a trial? Because we have submitted sufficient evidence of a summary judgment nature through affidavits and documents and exhibits which show there are internal discrepancies in these documents. That doesn't need a trial. I think it does entitle ... Unless you want to go into negotiating these. Let me come back ... I think it creates ambiguity, Your Honor. Let me come back to my first question. Have you got a federal appellate decision that says that in a collectively bargained ... An ERISA plan that's a result of collective bargaining where the collective bargaining agreement defines, addresses the contribution formula, that the vesting question is not governed because of that distinction, is not governed by ERISA? In this court's decision in John Morrill and Company v. United Food and Commercial Workers International Union ... The jury didn't address that question. The court said that the plans at issue were appendices to collective bargaining agreements and it is usually unwise to construe collective bargaining agreements without regard to their We will review the negotiating history of those agreements. But that was to determine the vesting question under ERISA, right? In other words, if ERISA vesting cases govern the contribution formula as well as the benefits to be received, then we're dealing with Maytag and Crown Cork and Halbach. Your Honor ... Those are our controlling cases. It's an essential piece of evidence here that was before the court. Have you not reached ... I'm not talking about a circuit. I'm talking about anybody that's ever suggested that the contribution formula that's collectively bargained for in an ERISA plan, that the vesting after the formula as opposed to plan benefits is governed not by ERISA but strictly by 301. The courts have held that the contractual agreement can govern. And I think that's really an essential meaning. Contracts always govern. They govern under ERISA. This contract here, Your Honor, the company proposed at the 2008 bargaining table exactly the change that they made unilaterally two years later. Let me try it a different way. In your view, is the collective bargaining agreement part of the ERISA plan in this case? The ERISA plan in this case referred to the collective bargaining agreement and said if there's a conflict between the plan and the collective bargaining agreement, the collective bargaining agreement will govern. You've got to give me a cite for that because that sounds contrary to federal ERISA law. It's in the record, Your Honor. Okay, give me the record cite. It's in the plan. Congress said you can't deviate from an ERISA plan. You can't have a cite agreement. That's the whole point of an ERISA plan is it lays down the law, so to speak. All right. It is on page, record page 1890. The Valor plan says, quote, however, if there is a conflict between this document and your collective bargaining agreement, the collective bargaining agreement will control. Quote, record page 1890, page 7 of 72 of the Valor plan under which Mr. Lee retired. And the collective bargaining agreement said the company will make these percentage contributions to your premium cost contribution. And to the extent there may be other provisions that are in conflict, we're not arguing that we were entitled to summary judgment. We didn't move for summary judgment. What we're arguing is that there are ambiguities that need to be probed in depth in a trial and that my clients have a right to do that. What other ambiguities, what other evidence do you want other than what's already in the record about the course of conduct that they paid for the benefits even though they didn't have to and the negotiations that went on? All I can really say, Your Honor, is that if I had felt my clients were entitled to summary judgment, I would have moved for it. If this court deems that the evidence is already in the record to show the ambiguities, Or the lack thereof. Or the lack thereof, certainly, Your Honor. Certainly, Your Honor. Our cases say if there's ambiguities, there's no vesting. Because vesting has to be clearly conferred. Because Congress has created a regime where the default rule is no vesting. Well, our position here, Your Honor, and the point of our appeal is that the negotiated collective bargaining agreement can't be ignored. And here the collective bargaining agreement said the company will provide these percentage contributions to your premium cost. They will provide it. Now, whatever may have occurred or might have occurred after the expiration of this 2008 to 2011 agreement is not part of this case. We are challenging the unilateral change during the term of a contract. The contract which says during the term of this agreement, the company will provide, will pay these percentages of your cost contribution of the premium cost. And we contend that that seals it, Your Honor. Thank you very much. And I would, since I've run out of my 15 minutes, I would only urge the court. We'll address that. Yes. Mr. Krumholz? Why are we talking about ERISA vesting? If counsel's right, this is not, this isn't an ERISA case. Why isn't that right? I respectfully disagree with counsel. Under the Hughes case, the Crown Court case, the Maytag case, in each and every one of those cases there was a CBA in question, the master agreements in Crown Court. They didn't deal with contribution formula questions, right? They dealt with benefit questions. They didn't, well, contribution has been identified as a benefit, first of all. Okay, what's the authority for that? Krippendorf, out of the very district we came from in Little Rock, citing a New York district court as well as authority. And no circuit has ever? No circuit that we have found, and I have looked on that issue long ago. And one thing we can do is layer this so that it may not be as important as it seems right now. First of all, Hughes says you have to look at the plan documents first. It was a CBA case, a bargaining employee case, and you have to look at the plan documents as well as the CBA to assess vesting. Crown Court says the same thing and does the same thing. Your Honor did the same thing in Maytag, of course. Even if the court decides not to look at the broad reservation of rights that's contained in the Windstream plan, that's contained ten times in the Windstream plan documents, or the Valor summary plan description, one need only look to the CBAs themselves for a broad reservation of rights in paragraph 6. It's hard to imagine a broader reservation of rights in that context. So either way, we believe that there is a broad reservation of rights provision. If you believe that to be the case, which I obviously do... Is there a way that the reservation of rights include how much you pay the union members? It absolutely includes... Forget the retirees, just the wages of the active union members. I assume there's something in the CBA that addresses that. Surely there's some wage formulas in the CBA. I imagine there is. I've been focusing on the MOA and retiree benefits. So would a reservation of rights clause give the employer the right to change those rates of pay? Of course not. What it gives the right of the employer to do is change the level of retiree medical benefits, the amounts or costs of premiums, the premium pricing mechanisms, the maximum company contribution amount, and all terms and conditions related thereto. This is in the MOA? Paragraph 6, it's in the 2002, the 2005, and the 2008 MOAs. And so one need only look to the paragraph 6 as a blanket reservation of rights. And of course, once you have a clear blanket reservation of rights, Your Honor, then it becomes, as you put it, difficult, almost impossible, but not impossible to overcome. Crown Court speaks of it as fatal without explicit vesting language. Maytag and Crown Court both put it at a very high standard. So the next question is, what sort of explicit vesting language would be required? What sort of affirmative indication of vesting would be required here? The CWA and Mr. Lee point to the will-be language found in paragraph 2. So we look then to established Eighth Circuit precedent on other provisions that have not sufficed. And you need look no further than the Maytag decision where for the life of the retiree was the language. You need look no further than the Crown Court decision which said until death, which was not sufficient. And it doesn't even come close here. In addition to that, under the 2008 MOA, there was a summary attached to it that expressly states has a blanket reservation of rights to modify, suspend, or terminate coverage. It also indicates that pensioners' and dependents' contributions are subject to alteration. That last quote from that summary attached to the 2008 MOA was not cited by counsel in his briefing for whatever reason, but is important and instructive here in addition to paragraph 6. Paragraph 8 of the 2008 MOA, after providing notice, which was undisputably provided, allows the company to change the level and type of benefits in any way, shape, or form and at their discretion. Your Honor, in addition to that, these particular MOAs, we believe incorporated the Windstream Plan and incorporated the Valor Summary Plan description through, I think it's paragraph 1, which indicates that these MOAs are governed by the terms and conditions of the Windstream Plan and of the Valor Summary Plan description, respectively. Every which way you analyze this, there is a layering of reservation of rights and a clear and conclusive intent of the parties to provide for the unilateral right to amend, just as Congress, frankly, intended. I didn't study the record. What was the Valor Plan document to which the SPD was addressed? You know, when you get these cases, you go back to historical documents that exist and we scrub them. They can be a mess. And they can be somewhat of a mess, as you know, Your Honor. But there's got to be a plan in order for there to be a Valor SPD. There was an Altel summary plan and then there was a Valor Summary Plan description. Both of those documents contain the broad reservation of rights. The current plan contains a broad reservation of rights. The plan in place at the time of retirement of Mr. Lee, and that is an issue as to all of the retirees, had the reservation of rights. There has not been one document that I have seen that is in any way explicit in terms of vesting that would overcome the Crown, Quark, or Maytag standards. Well, I was a little troubled because we have these cases that say an SPD can't add to the plan. So if you don't have a plan, an SPD is just floating out there. We also have the affidavit of, and this is an important point, I don't want to talk about extrinsic evidence particularly because I don't believe that it's appropriate to consider. But if you were to look at the extrinsic evidence, I don't see any indication of vesting at all, top, side, or bottom, from what has been put forward. The notion that because Windstream paid retiree benefits when the CBAs had terminated and there was no CBA in place, assuming that to be true, the Windstream plan was in place and would cover them with exactly the same benefits during that time frame inquired about. So that is not any indication of vesting. The other mentioned by Council about the exact, or close to the exact amounts of contribution, the 80-17, being negotiated in the 2008 CBA, is an interesting fact, but I don't think it weighs in either way on the vesting issue. I just don't see it. It may mean that they wanted an agreement. It may mean that they were providing notice as to what they were intending under paragraph 8 of the 2008 MOA, but it certainly doesn't suggest vesting, or at least I don't understand how it could. Your Honor, to find an ambiguity here under the existing case law would be extreme, frankly, and I don't see a way to get there from here. I will also indicate to you that these issues were heavily briefed before Judge Holmes, and Judge Holmes was very measured, very careful, very thoughtful, and went through every single document submitted, and I believe wrote very, very measured and thoughtful opinions on all of these subjects, leaving very little in question. So with that, Your Honor, I'll say that I don't believe that there is any indication of vesting that can overcome the reservation of rights. I don't believe that, to your question to counsel, other than paragraph 2, they can't point to any. To your question about whether this is a 301 case or an ERISA case, they're one and the same because the contract is both. The CBA incorporates it by reference. The CBAs are incorporated by reference, and we don't believe that extrinsic evidence is appropriate, and extrinsic evidence certainly cannot create ambiguity according to this Court. The Eighth Circuit's clear on that in contract interpretation cases. You can't use extrinsic evidence. The tail can't wag the dog to create an ambiguity. But if one were to say, okay, let's just go ahead and look at the extrinsic evidence, and why not go ahead and look at that, we don't believe that it provides any evidence of vesting at all, much less explicit indications of vesting that's required by the Court. For all of those reasons, we believe that Judge Holmes' well-reasoned opinion should be affirmed. I don't want to speak just to speak, but if the Court has any questions, I'm happy to answer them at this time. Thank you, Your Honor. Mr. Van Oss, I helped you use your time. I'd give you a minute for rebuttal to respond to why MOA paragraph 6 is not... I will, Your Honor. Counsel doesn't quote the last clause in MOA paragraph 6, which is, quote, shall not be subject to the grievance or arbitration procedure set forth in the collective bargaining agreement. It is a reasonable interpretation of that clause that what it really means is, and what it stands for, is that these questions, disputes about the plan don't go through the grievance and arbitration procedure of the collective bargaining agreement. In the deposition that I took of Mr. David Daniel, who negotiated this MOA three times, he talks about how that is a purpose... that is a purpose of that MOA paragraph 6, and that is in the record, page 1374, on pages 106 to 108, of Mr. Daniel's deposition. I have one question. I'm not sure I understand. You want to get in this extrinsic evidence of the course of conduct, paying the benefits anyway, and I'm not sure just how that helps you. They said that, so what, basically? Well, there's two levels of our argument, Your Honor. One of the levels of our argument is that the contract on its face prohibited the company from making this change unilaterally during the term of the agreement, under Section 301. So if, on the other hand, it's ambiguous, this somehow helps resolve the ambiguity, and I don't know why or how exactly. Well, it's the response to... It's the response to... I make this argument about the ambiguity in response to what the lower court did, because the lower court held that the collection of documents unambiguously gave the company the right to make this unilateral change. I argue that it did not. And, in fact, that even MOA Paragraph 6 is susceptible reasonably to another interpretation. That is that it exempted these issues from the grievance and arbitration procedure of the agreement. And, in fact, we have testimony from a man who negotiated... ERISA virtually required. You almost didn't have to write that in. Right. ERISA required... ERISA creates statutory remedies that can't be trumped. ...an administrative procedure. And under the way this case developed, it was really incumbent on my clients to respond to the company's lawsuit  Thank you, Your Honor. The case has been thoroughly briefed. The argument's been helpful. It's complicated. We'll take it under advice. Thank you, Your Honors.